# EXHIBIT A



**COMMERCIAL REAL ESTATE MORTGAGE NOTE**
[Adjustable Rate-U.S. Treasury Securities Index Rate]

$490,000.00                                                                                                June 27, 2008

FOR VALUE RECEIVED, the undersigned, Jean A. DeGutis of 44 Warren Street, Plainville, Massachusetts 02762, (individually and collectively called the "maker") promises to pay to the order of WEBSTER BANK, NATIONAL ASSOCIATION, a national association having an address at 145 Bank Street, Waterbury, Connecticut 06702 (the "Lender") (the Lender and each successor, owner and holder of this Note being generally called the "holder") the sum of Four Hundred Ninety Thousand and 00/100 DOLLARS ($490,000.00) together with the following: (i) interest thereon (based upon a 360-day year and the actual number of days in each month) at the rate and in the manner hereinafter provided; (ii) all amounts which may be or become due under the Mortgage (as that term is defined in this Note) or under any other document securing the indebtedness evidenced by this Note; (iii) all costs and expenses, including attorneys' and appraisers' reasonable fees (including, but not limited to, allocable costs of staff counsel), incurred in the collection of this Note (including, without limitation against any maker, endorser, guarantor, surety or other party obligated to pay the indebtedness evidenced by this Note) or the foreclosure of the Mortgage, or in protecting or sustaining the lien of the Mortgage or in any litigation or controversy arising from or connected with this Note, the Mortgage or any of the other Loan Documents (as that term is defined in this Note) (iv) all taxes or duties assessed upon the indebtedness evidenced by this Note or by the Mortgage or upon the Mortgaged Property (as defined in the Mortgage) or upon any other collateral securing payment or any guaranty of payment of the indebtedness evidenced by this Note.

1. Principal and interest are due and payable in arrears, in monthly installments, on the 27th day of the month at an office of the Lender, in Waterbury, Connecticut, or at such other place as the holder hereof may designate to maker in writing. Principal and interest are payable in legal tender of the United States of America.

2. This Note shall bear interest on the unpaid balance from time to time outstanding at a rate to be determined as follows:

(a) Until the first Adjustment Date, the interest rate shall be 6.66% per annum.

(b) The interest rate during each Adjustment Period shall be a fixed rate per annum equal to 250 basis points above the Index Rate as determined on the Adjustment Date which is the first day of such Adjustment Period.

(c) The foregoing interest rate is conditioned upon, among other things, all payments being deducted by the holder automatically from the maker's deposit account maintained by the maker with the Lender. In the event that the maker elects (whether by instructions to the Lender, by not maintaining sufficient amounts in its deposit account with the Lender for two (2) consecutive due dates, or otherwise) for any period of time to not have payments on this Note deducted from the maker's deposit account with the Lender, the interest rate shall increase to one percentage point (1%) per annum in greater than the foregoing interest rates for each Adjustment Period. [For example, in the event that such election by the maker occurs prior to the first Adjustment Date after the execution of

CT

this Note the interest rate during the remainder of said Adjustment Period would be one percent (1%) per annum higher than the rate set forth in subsection 2(a) above.]

(d) As used in this Note, the following terms shall have the following meanings:

"Index Rate" on any Adjustment Date shall mean the "Weekly Yield Percentage" for United States Treasury fixed interest obligations adjusted to a constant maturity of ten (10) years, as most recently published 3 days prior to the Adjustment Date. "Weekly Yield Percentage" shall mean the yield per annum on United States Treasury securities at constant maturity reported weekly and constructed by the United States Treasury Department, based on actively traded marketable United States Treasury securities, as published by Webster Bank, National Association's Treasury Sales Group.

"Adjustment Date" shall mean the dates which are ten (10) years following the date of this Note.

"Adjustment Period" shall mean each period of ten (10) years commencing on an Adjustment Date, provided that the last Adjustment Period shall be a period of ten (10) years.

(e) Each adjustment of the interest rate on this Note pursuant to paragraph 2(b) hereof shall take effect automatically on the applicable Adjustment Date. Holder shall use reasonable efforts to mail to Maker, within ten (10) days after each Adjustment Date written notice (the "Adjustment Notice") specifying the interest rate at which this Note will bear interest from and after the applicable Adjustment Date and specifying the amount of each monthly installment that will be payable from and after such Adjustment Date. Each adjustment of the interest rate on this Note pursuant to paragraph 2(c) hereof shall take effect automatically on the date of the election by maker to terminate deduction of all payments from its deposit account with the Lender and Holder shall use reasonable efforts to mail to Maker after such event a written Adjustment Notice specifying the revised interest rate at which this Note will bear interest from and after the applicable date and specifying the amount of each monthly installment that will be payable from and after such date. Notwithstanding the foregoing, Maker shall not be relieved of any obligations under the terms of this Note in the event of any failure of Holder to mail an Adjustment Notice, or any failure of Holder to mail an Adjustment Notice in a timely or proper manner, or any failure of Maker to receive an Adjustment Notice, or the presence of any error or errors in an Adjustment Notice.

(f) If the holder shall deem applicable to this Note, any requirement of any law of the United States of America, any regulation, order, interpretation, ruling, official directive or guideline (whether or not having the force of law) of the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, the Federal Deposit Insurance Corporation or any other board or governmental or administrative agency of the United States of America which shall impose, increase, modify or make applicable thereto or cause to be included in, any reserve, special deposit, calculation used in the computation of regulatory capital standards, assessment or other requirement which imposes on the holder any cost that is attributable to the maintenance hereof, then, and in each such event, the holder shall notify the maker thereof and the maker shall pay the holder, within 30 days of receipt of such notice, such amount as will compensate the holder for any such cost, which determination may be based upon the holder's reasonable allocation of the aggregate of such costs resulting from such events. In the event any such cost is a continuing cost, a fee payable to the holder may be imposed upon the maker periodically for so long as any such cost is deemed applicable to the holder, in an

amount determined by the holder to be necessary to compensate the holder for any such cost. The determination by any holder of the existence and amount of any such cost shall, in the absence of manifest error, be conclusive. Any such costs, fees or other amounts payable by maker shall be in addition to any Prepayment Fee, interest, costs or other charges required to be paid by maker pursuant to this Note, the Mortgage or any other Loan Documents.

(g) The maker agrees to indemnify the holder and to hold the holder harmless from any loss or expense (including, without limitation, any lost profit) that it may sustain or incur as a consequence of any prepayment (whether optional or mandatory) or any default by the holder in the payment of the principal of or interest on the loans made by Lender evidenced by this Note with an interest rate based upon the Index Rate or as a consequence of any failure by the maker to complete a borrowing of, a prepayment of or conversion of any such loans after notice thereof has been given, including, but not limited to, any loss or profit or any interest payable by the holder to lenders of funds obtained by it in order to make or maintain its Index Rate hereunder. Any such loss or expense payable by maker shall be in addition to any Prepayment Fee, interest, costs or other charges required to be paid by maker pursuant to this Note, the Mortgage or any other Loan Documents.

3. Principal and interest shall be due and payable, with interest payable in arrears, in monthly installments as follows:

(a) Payments in the amount of Three Thousand Seven Hundred Twenty Seven and 78/100 Dollars ($3,727.78) shall be due and payable on July 27, 2008 and on the 27th day of each and every month thereafter through and including the first Adjustment Date.

(b) Payments in the amounts determined below shall be due and payable on the 27th day of the month immediately following each Adjustment Date and on the 27th day of each and every month thereafter until the entire principal balance of the indebtedness evidenced by this Note and all interest and other amounts from time to time payable hereunder shall have been paid in full.

(c) Beginning with the first monthly payment due and payable after each Adjustment Date, monthly payments hereunder shall be adjusted to the amount that would fully amortize the then-outstanding principal balance at the adjusted interest rate then in effect in equal payments over a period of twenty (20) years from the date of the first payment due under this Note (the "Amortization Period").

(d) During any period in which the maker has elected not to have payments on this Note deducted from the maker's deposit account with the Lender (as described in section 2(c) above), beginning with the first monthly payment due and payable after such election, monthly payments hereunder shall be adjusted to the amount that would fully amortize the then-outstanding principal balance at an interest rate one percentage point (1%) per annum greater than the interest rate otherwise applicable during each Adjustment Period in equal payments over the Amortization Period.

(e) If not sooner paid, all amounts owing under this Note shall be due and payable in full on June 27, 2028 (the "Maturity Date").

4. In the event that any installment to be paid under the terms of this Note or any payment to be paid under the Mortgage or under any of the other Loan Documents (as that term is defined in this Note) is not paid within ten (10) days from the due date, the holder hereof may charge and collect a "late charge" equal to

- 3 -

5% of such delinquent installment or other payment. Such late charges shall be charged on a monthly basis for each installment and shall accrue until paid in full. Maker agrees that such "late charge" is an agreed reasonable estimate of the amount of the expenses of holder incident to handling such delinquent payment, which expenses may be difficult for the parties to quantify, and which "late charge" constitutes agreed upon liquidated damages in addition to the payment of interest.

5. Upon the occurrence of any one or more of the following events (herein, "**Events of Default**") the holder, at its option, may declare the entire unpaid principal balance of this Note and accrued and unpaid interest hereon immediately due and payable without demand, notice or protest (all of which are hereby waived):

(a) The failure to pay: (i) any monthly installment of principal and/or interest pursuant to this Note, or (ii) any other payment of any prepayment fee, costs or any other payment due pursuant to this Note, the Mortgage or any other document securing or executed in connection with this Note (the "Loan Documents"), whether at maturity, by acceleration, as part of any prepayment or otherwise; or

(b) If the maker or any endorser or guarantor of the obligations of the Maker hereunder (herein each a "Guarantor") or any creditor of the Maker who has subordinated their interest in favor of Lender (a "Subordinating Party") shall be in default of or fail to keep and perform any of the agreements or provisions contained in this Note, the Mortgage or in any other Loan Documents or any other instrument, document, mortgage or agreement that may now or hereafter evidence, govern or secure this Note; or

(c) The occurrence of a default or event of default in the performance of any covenant, condition or agreement contained in any Permitted Encumbrance (as that term is defined in the Mortgage); or

(d) If any representation or warranty of maker or any Guarantor or Subordinating Party set forth in this Note, the Mortgage or any other Loan Documents, or in any notice, certificate, demand or request delivered to holder pursuant to the Mortgage, this Note or the other Loan Documents shall prove to be incorrect or misleading in any material and adverse respect as of the time when made; or

(e) The failure to observe or perform any covenant or agreement contained in Section 2.1, 2.2, 2.5, 2.6, 2.8, 2.9, 2.10, 2.11, 2.13, 2.14, 2.15 and/or 2.16 of the Mortgage; or

(f) The failure to duly observe or perform any other covenant, condition or agreement of maker contained herein, in any provision of the Mortgage (other than referenced in subsection (e) above) or in any of the other Loan Documents, and said other default in the Mortgage or in any of the other Loan Documents shall have continued for 30 days after notice thereof to maker; or

(g) If all or any material part of the Mortgaged Property (as defined in the Mortgage) is taken in any eminent domain or other proceeding or if the value of the Property is materially impaired thereby in the sole opinion of the holder, either permanently or temporarily for a period in excess of 90 days; or

(h) If the Property and/or any improvements thereon is demolished, removed, substantially altered (except with the written consent of holder), abandoned or materially destroyed or damaged by fire or other casualty (unless restoration is proceeding pursuant to Section 2.8 of the Mortgage); or

- 4 -

(i) If maker or any guarantor, endorser or surety for maker shall become a debtor or bankrupt or be declared insolvent under the United States Bankruptcy Code or any other federal or state law (now in effect or hereafter enacted) relating to bankruptcy, insolvency, reorganization, winding-up or adjustment of debts (collectively called "Bankruptcy Laws"), or if maker shall (I) apply for or consent to the appointment of, or the taking of possession by, any receiver, custodian, trustee or liquidator (or other similar official) of the Mortgaged Property or of any substantial portion of maker's property, or (ii) generally not pay its debts as they become due, or admit in writing its inability to pay its debts generally as they become due or (iii) make a general assignment for the benefit of its creditors, or (iv) file a petition commencing a voluntary case under or seeking to take advantage of any Bankruptcy Law, or (v) fail to controvert in a timely and appropriate manner, or in writing acquiesce in, any petition commencing an involuntary case against maker or otherwise filed against maker pursuant to any Bankruptcy Law, or (vi) take any action in furtherance of any of the foregoing;

(j) If an order for relief against maker or any guarantor, endorser or surety for maker shall be entered in any involuntary case under the United States Bankruptcy Code or any similar order against maker shall be entered pursuant to any other Bankruptcy Law, or if a petition commencing an involuntary case against maker or proposing the reorganization of maker under the United States Bankruptcy Code shall be filed in and approved by any court and not be discharged, dismissed or denied within 60 days after such filing, or if a proceeding or case shall be commenced in any court seeking (i) the liquidation, reorganization, dissolution, winding-up or adjustment of debts of maker, or (ii) the appointment of a receiver, custodian, trustee or liquidator (or other similar official) of the Mortgaged Property or of maker or of any substantial portion of maker's property, or (iii) any similar relief as to maker pursuant to any Bankruptcy Law – and any such proceeding or case shall continue without being dismissed, or an order, judgment or decree approving or ordering any of the foregoing shall be entered and continue in effect for 30 days without being dismissed or stayed; or

(k) If the maker or any Guarantor shall be in default in payment of principal or interest on any obligation for borrowed money beyond any grace period provided with respect thereto, the effect of which default is to cause or permit the holder of such obligation to accelerate such obligation to become due and payable immediately or prior to its date of maturity; or

(l) The occurrence of any other event which entitles the holder of any other indebtedness on which maker or any Guarantor is obligated, or which is secured by the Mortgaged Property or any part thereof, to accelerate the maturity of such indebtedness; or

(m) If maker or any Guarantor, or any partner of maker or any Guarantor, shall die, become legally incapacitated, be terminated, dissolved, wound up or liquidated; or

(n) If the maker or any Guarantor shall be in default of, or suffer demand with respect to, any other indebtedness to the Lender or holder; or

(o) If the maker or any Guarantor shall be in default under any other agreements with the Lender or holder; or

(p) If the Lender or other holder hereof deems itself insecure or if there is such a change in the condition or affairs (financial or otherwise) of the maker or any Guarantor as the Lender or other holder believes in good faith materially impairs the financial condition of such maker or Guarantor or increases the Lender's or other holder's risk of nonpayment of this Note; or

(q) The occurrence of an event that pursuant to the terms of any of the other Loan Documents is deemed to constitute an Event of Default thereunder or hereunder.

6. Upon occurrence of an Event of Default or, in any event, after the Maturity Date, the interest rate of this Note shall increase, at holder's option, until payment (including any period of time occurring after judgment), to a Default Rate being the lower of: (a) the highest rate allowed by law above the interest rate that would otherwise be in effect under this Note; or (b) a rate per annum equal to four percentage points (4.0%) above the rate of interest that would otherwise be in effect under this Note, as the same may vary from time to time.



7. The undersigned will pay on demand all attorneys' and appraisers' fees, out-of-pocket expenses incurred by the holder's attorneys and all costs incurred by the holder in the administration and collection of all obligations of the maker to the holder, including, without limitation, costs and expenses associated with travel on behalf of the holder, which costs and expenses are directly or indirectly related to the preservation, protection, collection, or enforcement of any of the holder's rights against the maker or any endorser or guarantor, or any Subordinating Party, and against any collateral given to the holder to secure this Note or any other obligations of the maker or any endorser or guarantor to the holder (whether or not suit is instituted by or against the holder or any legal appearances are made in any court on behalf of the holder). The obligation to pay all costs, expenses and attorneys' and appraisers' fees set forth in this Note shall expressly include those as may be incurred by the holder to collect the indebtedness due hereunder after judgment in favor of the holder including, without limitation, those incurred by the holder to foreclose any judgment lien, or to realize upon any collateral or to otherwise obtain payment and satisfaction of such judgment.

8. The maker and each endorser, guarantor and surety of this Note hereby give the Lender a security interest, lien and right of set off for all their respective liabilities upon and against all their deposits, deposit accounts, credits, collateral and property, now or hereafter in the possession, safekeeping, custody or control of Lender and its affiliates or in transit to them. At any time, without demand or notice, Lender may set off the same or any part thereof and apply the same to any liability or obligation of maker or any guarantor even though unmatured. Maker and each endorser, guarantor and surety hereby agrees and acknowledges that holder may apply and reapply any and all payments received by holder against any indebtedness owing by maker or by such endorser, guarantor or surety to holder in such order as holder may elect, in its sole discretion, notwithstanding any direction as to such application by maker, such endorser, guarantor or surety or by any trustee in bankruptcy or other representative of such party.

9. The maker and each endorser, guarantor and surety of this Note hereby waive demand, protest, presentment for payment, notice of nonpayment, notice of protest, notice of dishonor and diligence in bringing suit against any party, and do hereby consent to (i) all renewals, extensions or modifications of this Note, the Mortgage or the other Loan Documents (including any affecting the time of payment), (ii) all advances under this Note, the Mortgage or the other Loan Documents, (iii) the release, surrender, exchange or substitution of all or any part of the security for the indebtedness evidenced by this Note, or the taking of any additional security, (iv) the release of any or all other persons from liability, whether primary or contingent, for the indebtedness evidenced by this Note or for any related obligations, (v) the granting of any other indulgences to any such person, and (vi) all defenses based upon suretyship or impairment of collateral, whether now existing or arising hereafter. Any such renewal, extension, modification, advance, release, surrender, exchange, substitution, taking or indulgence may take place without notice to any such person, and, whether or not any such notice is given, shall not affect the liability of any such person.

10. No delay or omission by the holder in exercising or enforcing any of the holder's powers, rights, privileges, remedies or discretion hereunder shall operate as a waiver thereof on that occasion or on any other occasion. No waiver of any Event of Default hereunder shall operate as a waiver of any other Event of Default hereunder, or as a continuing waiver. No requirement hereof may be waived except in a writing, signed by holder. This Note may not be modified except by an instrument in writing executed by the maker and the holder hereof.

11. All notices, demands, or other communications made pursuant to this Note shall be in writing. Any notice to the maker or to the holder shall be deemed to have been given if mailed, by certified or registered mail, postage prepaid, return receipt requested, or if delivered by nationally recognized overnight air courier return receipt requested, service, charges prepaid, to the maker or any endorser, guarantor or surety at the address of the maker appearing in the first paragraph of this Note and to the Lender addressed to Webster Bank, National Association, Business & Professional Banking, 436 Slater Road, New Britain, CT 06053, or at such other address as such party shall have specified by not less than five (5) days prior written notice to the other party. No notation on a check or other method of payment or associated correspondence shall be effective to bind the holder, as evidence of an accord and satisfaction or otherwise, unless it is sent by certified mail, postage prepaid to the attention of the "General Counsel" of the holder at the address of such holder or such other address, if any, specified by holder, in a written notice sent to maker and it unless it is otherwise enforceable under applicable law.

12. This Note is secured by an Open-End Mortgage Deed, Security Agreement and Assignment (the "Mortgage") dated June 27, 2008, from the maker, as Mortgagor, to the Lender, as Mortgagee, in the Note amount and by certain other collateral security documentation to be recorded in the Norfolk County Registry of Deeds in which the Mortgaged Property (as that term is defined in the Mortgage) is located. The Mortgage constitutes a valid first lien on the maker's leasehold and fee interest in certain property more particularly described therein, known as 44 Warren Street, Plainville, Norfolk County, Massachusetts. This Note is being executed and delivered in Massachusetts, and shall be governed by and construed in accordance with the substantive laws of the Commonwealth of Massachusetts, to the maximum extent the parties may so lawfully agree.

13. It is the intention of parties hereto to comply strictly with all applicable usury laws; and, accordingly, in no event and upon no contingency shall any party be entitled to receive, collect, or apply as interest, any interest, fees, charges, or other payments equivalent to interest, in excess of the maximum amount which may be charged from time to time under applicable law; and, in the event that any party ever receives, collects, or applies as interest any such excess, such amount which would be excessive interest shall be applied to the reduction of the principal amount of the indebtedness evidenced hereby; and, if the principal amount of the indebtedness evidenced hereby and all interest thereon is paid in full, any remaining excess shall forthwith be paid to the maker or other party lawfully entitled thereto. In determining whether or not the interest paid or payable, under any special contingency, exceeds the maximum which may be lawfully charged, the maker and the party receiving such payment shall, to the maximum extent permitted under applicable law, characterize any non-principal payment as an expense, fee or premium, rather than as interest. Any provision hereof or of any other agreement between the parties hereto that operates to bind, obligate, or compel the maker to pay interest in excess of such maximum rate, shall be construed to require the payment of the maximum rate only.

14. Maker may prepay the indebtedness evidenced by this Note, in whole or in part, at any time, upon ten (10) days prior written notice to the holder and payment to the holder of a fee (the "Prepayment Fee"), provided that any partial prepayments shall be in an amount of not less than one thousand dollars

($1,000.00). The Prepayment Fee shall be an amount equal to the following percentage of the amount of any such prepayment made during the following periods of time: (a) five percent (5%) of the amount of such prepayment made during the period ending 12 months after the date of this Note; (b) four percent (4%) of the amount of such prepayment made during the period 12 months to 24 months after the date of this Note; (c) three percent (3%) of the amount of such prepayment made during the period 24 months to 36 months after the date of this Note; (d) two percent (2%) of the amount of such prepayment made during the period 36 months to 48 months after the date of this Note; (e) one percent (1%) of the amount of such prepayment made during the period 48 months to 60 months after the date of this Note; (f) no Prepayment Fee shall be due and payable for any prepayments made 60 months or more after the date of this Note. Any and all prepayment shall be credited first to accrued interest to the date of the prepayment, then to escrow payments and other charges accrued pursuant to this Note and the Mortgage and then to the unpaid principal installments of this Note in the inverse order of their maturity and shall not affect the obligation to pay the regular installments required hereunder, until the entire indebtedness has been paid. The covenants of the maker set forth in this paragraph, and the guaranty of maker's obligations by any guarantors or endorsers, shall survive the payment or discharge of this Note and/or the release of the Mortgage and any other instruments or collateral securing this Note.

15. If the maturity of this Note shall be accelerated for any reason, then a tender of payment by maker, or by anyone on behalf of maker, of the amount necessary to satisfy all sums due hereunder shall be deemed to be a voluntary prepayment under this Note, any such prepayment, to the extent permitted by law, shall require payment of the Prepayment Premium, if any, set forth in section 14 above.

16. Lender may assign this Note, the Mortgage and the Loan Documents or may issue participation interests or enter into participation interests with other parties for all or any portion of the indebtedness evidenced by this Note or the other Loan Documents.

17. If the Note is now, or hereafter shall be, signed by more than one person, it shall be the joint and several obligation of all such persons (including, without limitation, all makers, endorsers, guarantors and sureties, if any) and shall be binding on all such persons and their respective heirs, executors, administrators, legal representatives, successors and assigns. This Note shall be binding upon the undersigned and upon its successors, assigns, and representatives, and shall inure to the benefit of the holder and its successors and assigns.

18. THE MAKER, AND EACH GUARANTOR AND OTHER SURETY OF THIS NOTE HEREBY ACKNOWLEDGE AND AGREE THAT IF THIS NOTE IS LOST OR DESTROYED A COPY OF THIS NOTE MAY BE INTRODUCED INTO EVIDENCE IN ANY COURT BY THE HOLDER INSTEAD OF THE ORIGINAL TO PROVE THE CONTENTS HEREOF AND SAID PARTIES HEREBY IRREVOCABLY WAIVE ANY OBJECTION TO INTRODUCTION INTO EVIDENCE OF SUCH A COPY. MAKER, AND EACH GUARANTOR AND OTHER SURETY FURTHER ACKNOWLEDGE AND AGREE THAT LENDER WILL RELY UPON THE WAIVERS AND ACKNOWLEDGEMENTS SET FORTH IN THIS NOTE IN MAKING THE LOAN(S) TO THE MAKER EVIDENCED BY THIS NOTE.

19. THE MAKER AND EACH GUARANTOR AND OTHER SURETY OF THIS NOTE (1) ACKNOWLEDGE THAT THE ADVANCES EVIDENCED BY THIS NOTE ARE PART OF A COMMERCIAL TRANSACTION AND (2) TO THE EXTENT PERMITTED BY ANY STATE OR FEDERAL LAW, (INCLUDING, WITHOUT LIMITATION, CONNECTICUT GENERAL STATUTES SECTIONS 52-278a to 52-278g, INCLUSIVE) WAIVE THE RIGHT ANY OF THEM MAY HAVE TO PRIOR NOTICE OF AND A

HEARING ON THE RIGHT OF ANY HOLDER OF THIS NOTE TO ANY REMEDY OR COMBINATION OF REMEDIES THAT ENABLES SAID HOLDER, BY WAY OF ATTACHMENT, FOREIGN ATTACHMENT, GARNISHMENT OR REPLEVIN, TO DEPRIVE MAKER, ENDORSER, GUARANTOR OR SURETY OF ANY OF THEIR PROPERTY, AT ANY TIME, PRIOR TO FINAL JUDGMENT IN ANY LITIGATION INSTITUTED IN CONNECTION WITH THIS NOTE.

20. THE MAKER, AND EACH GUARANTOR AND OTHER SURETY OF THIS NOTE VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE ALL RIGHT TO A TRIAL BY JURY IN ANY PROCEEDING HEREAFTER INSTITUTED BY OR AGAINST THE LENDER, THE MAKER OR ANY GUARANTOR OR OTHER SURETY IN RESPECT OF THIS NOTE OR ARISING OUT OF ANY LOAN DOCUMENTS, INSTRUMENT OR AGREEMENT EVIDENCING, GOVERNING OR SECURING THIS NOTE.

WITNESS the execution hereof under seal this 27th day of June, 2008.

Witness: _____

6/27/08

By: _____
Jean A. DeGutis

## GUARANTY AND ENDORSEMENT

IN CONSIDERATION OF the loan or other extension of credit or accommodation evidenced by the foregoing Note, the undersigned (and, if more than one, each of them jointly and severally) hereby unconditionally guarantee(s) to Webster Bank, National Association and every subsequent holder of said note, irrespective of the genuineness, validity, regularity or enforceability thereof or of any security therefor, or of the existence or extent of any such security, or of any other circumstance, the prompt payment of said note and of all sums stated therein to be payable, when due, at maturity, by acceleration or otherwise. Each signature hereto is intended also as an endorsement of the within note, and the undersigned hereby agree to be bound by all of the terms and conditions of said note and the Mortgage and other Loan Documents referenced in said Note that pertain to guarantors and endorsers.

The undersigned further each agree to pay all costs and expenses, including attorneys' fees, arising out of or with respect to the validity, enforceability, defense, collection or preservation of this Guaranty and Endorsement.

The undersigned each further guaranty that all payments made by the maker to the holder with respect to any liabilities hereby guarantied will, when made, be final and agree that if any such payment is

recovered from or repaid by the holder in whole or in part in any bankruptcy, insolvency or similar proceeding instituted by or against the maker, this Guaranty and Endorsement shall continue to be fully applicable to such liabilities to the same extent as though the payment so recovered or repaid had never been originally made on such liabilities. The undersigned each hereby waive any claim, right or remedy which the undersigned may now have or hereafter acquire against the maker or any of its assets or property that arises hereunder or from the performance by the undersigned hereunder, including without limitation, any claim, right or remedy of subrogation, reimbursement, exoneration, contribution, indemnification or participation in any claim, right or remedy that the holder may have against the maker or any security for the liabilities of the maker which the holder now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.

Upon any default of the maker, the liability of the undersigned shall be effective immediately and payable on demand without any suit or action against the maker. No delay or omission on the part of the holder in exercising any right hereunder shall operate as a waiver of such right or any other right; a waiver on one occasion shall not be a bar to or waiver of any right on any other occasion.

The liability of the undersigned with respect to any liability shall not be terminated by, and the undersigned each assent to any extension or postponement of the time of payment or any other indulgence, any modification, waiver or amendment of the terms of any agreement relating to liabilities, any substitution, exchange or release of collateral, the addition or release of any party primarily or secondarily liable including any of the undersigned, whether or not notice thereof is given to the undersigned. The holder shall have no duty to collect or protect any collateral or any income thereon, nor to preserve any rights against other parties, and the holder may proceed under this Guaranty and Endorsement immediately upon maker's default without resorting to or regard to any collateral or any other guaranty or source of payment. The undersigned each hereby waive any and all defenses based upon suretyship or impairment of collateral, whether now existing or arising hereafter.

WITNESS:

_____

G. J. CASEY

Equitation Unlimited, Inc.

_____
Jean A. DeGutis, President and Treasurer

J:\Judi\EJC\CmIRE\DeGutis Webster\Mortgage Note-Adjustable-US Treasury Index.doc

- 10 -